IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-03187-CMA

OSCAR VILLAESCUSA-RIOS,

    Petitioner,

v.

JOHN CHOATE, Warden, The GEO Group, Aurora Immigration and Customs Enforcement Processing Center,
JOHN FABBRICATORE, Field Director, Immigration and Customs Enforcement,
TONY H. PHAM, Acting Director for Immigration and Customs Enforcement,
CHAD F. WOLF, Acting Secretary of the Department of Homeland Security,
NATHALIE R. ASHER, Executive Associate Director of Enforcement and Removal of America, and
WILLIAM BARR, Attorney General, United States of America,

    Respondents.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION AND COMPLAINT FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on Petitioner Oscar Villaescusa-Rios's Petition and Complaint for Writ of Habeas Corpus ("Petition"). (Doc. # 1.) For the following reasons, the Court grants the Petition to the extent it seeks an individualized bond hearing and denies the Petition to the extent it seeks all other relief.

## I.    BACKGROUND

Oscar Villaescusa-Rios ("Petitioner" or "Mr. Villaescusa-Rios") is a 51-year-old Mexican national who suffers from bipolar disorder, post-traumatic stress disorder ("PTSD"), and a genetic lung condition called idiopathic pulmonary hemosiderosis.

(Doc. # 1 at 4–5.) Petitioner became a lawful permanent resident ("LPR") of the United States in May of 1989. He has lived in Tucson, Arizona, most of his life and has five children. Petitioner has a lengthy criminal history, which dates back to 1992. (Doc. # 12-1 at 2–4.)

On July 17, 2018, the Department of Homeland Security ("DHS") issued a Notice to Appear against Mr. Villaescusa-Rios pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 USC § 1101(a)(43)(E)(ii), on the basis that he is an alien who, any time after admission, has been convicted of an aggravated felony. (*Id.* at 4.) On that day, Petitioner was placed in removal proceedings and taken into custody by Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1226(c)(1)(B), which provides that DHS "shall take into custody" individuals with certain serious criminal offenses pending the outcome of removal proceedings. Petitioner was transferred to the GEO Aurora Detention Facility on July 20, 2018, where he has since remained in ICE custody. (*Id.* at 5.) To date, Mr. Villaescusa-Rios has been detained without an individualized bond hearing for 925 days—i.e., 30 months.

On July 17, 2019, Petitioner had an individual hearing on his applications for withholding of removal and relief under the Convention Against Torture. (Doc. # 1 at 6.) On September 3, 2019, the Immigration Judge ("IJ") for the Aurora Immigration Court issued a written decision denying all forms of relief and ordering Petitioner removed based on a finding that Petitioner had been convicted of a "particularly serious crime" under the Immigration and Nationality Act. (*Id.*)

Mr. Villaescusa-Rios timely appealed the Order of Removal to the Board of Immigration Appeals ("BIA") on October 2, 2019. On February 25, 2020, the BIA reversed the particularly serious crime determination and remanded the case to the IJ for consideration of Petitioner's claim for withholding of removal. (*Id.*) On April 22, 2020, Petitioner had his individual hearing on remand. The IJ granted Mr. Villaescusa-Rios withholding of removal on May 7, 2020. *See* (Doc. # 1-3).

DHS appealed the grant of withholding of removal to the BIA on May 22, 2020. Briefing was completed on August 14, 2020. As of the date of this Order, the appeal remains pending before the BIA.

Petitioner filed the instant Petition and a Motion for Temporary Restraining Order (Doc. # 2) on October 26, 2020. Respondents' Response to Habeas Petition and Motion for Temporary Restraining Order and Preliminary Injunction followed. (Doc. # 12.) Petitioner filed a Reply. (Doc. # 13.)

## II.   ANALYSIS

### A.   PETITIONER'S REQUEST FOR AN INDIVIDUALIZED BOND HEARING

In his Petition, Mr. Villaescusa-Rios asserts that his ongoing detention pending a final order of removal has become constitutionally unreasonable and, therefore, requires an individualized bond hearing to comport with the Fifth Amendment's due process guarantee. Respondents argue that because Petitioner has been mandatorily detained pursuant to 8 U.S.C. § 1226, he is not entitled to a bond hearing under the statute and pursuant to *Demore v. Kim*, 538 U.S. 510 (2003). Herein, the Court determines that

Petitioner's detention has become constitutionally unreasonable and, therefore, Petitioner is entitled to an individualized bond hearing.

8 U.S.C. § 1226(c) provides for mandatory detention of any alien who is removable from this country because he or she has been convicted of one of a specified set of crimes. The parties agree that Section 1226(c) applies to the detention of Mr. Villaescusa-Rios. There is no statutory right to a bond hearing or any sort of custody redetermination hearing under Section 1226(c). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846, 850–51 (2018). However, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523. The question remains, therefore, whether Petitioner's detention comports with due process requirements.

Respondents assert that the Supreme Court's 2003 opinion in *Demore*, 538 U.S. 510, precludes this Court from ordering an individualized bond hearing in this case. The Court disagrees. In *Demore*, the Supreme Court considered the constitutionality of a six-month period of mandatory detention pursuant to Section 1226(c). Though Respondents are correct that the Court in *Demore* found no constitutional violation, they remove the Court's holding from its factual context. The *Demore* Court's holding that Section 1226(c) permissibly imposes mandatory detention for the "brief period necessary for . . . removal proceedings," 538 U.S. at 513, 523, is rooted in the reality that, at that period in time, mandatory detentions were brief:

> in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration

4

> Appeals, appeal takes an average of four months, with a median time that is slightly shorter. . . . In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.

*Id.* at 529–30 (citations omitted). Moreover, Justice Kennedy's concurrence reinforced that a short duration of detention was dispositive of the majority's holding. He reasoned that because "the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). Accordingly, this Court agrees with the District of Minnesota and numerous of other federal district courts[1] in concluding that "*Demore* expressed the understanding that detention under § 1226(c) would be brief, and this assumption was 'key to [the Court's] conclusion that the law complied with due process.'" *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (citation omitted).

Almost 20 years after the Supreme Court's decision in *Demore*, periods of mandatory detention have grown significantly. In stark contrast to the *Demore* Court's expectation that five months of mandatory detention would arise only in rare cases, Petitioner has been detained without a hearing for more than 30 months as of the date of this Order.

---

[1] *See, e.g.*, *Singh v. Choate*, No. 19-CV-00909-KLM, 2019 WL 3943960 (D. Colo. Aug. 21, 2019), *appeal dismissed,* No. 19-1416, 2020 WL 2028502 (10th Cir. Jan. 22, 2020); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018).

Unfortunately, in *Demore*, the Supreme Court did not indicate at what point a period of mandatory detention is so prolonged as to become unreasonable or unjustified such that the detained LPR is entitled to an individualized determination as to his risk of flight and dangerousness. However, several district courts, including Magistrate Judge Kristen L. Mix of the District of Colorado, have applied a multi-factor balancing test to evaluate whether mandatory detention without an individualized bond hearing has become unconstitutionally prolonged.[2] The Court agrees with and adopts the reasoning of Judge Mix in *Singh v. Choate* and applies the following factors to determine whether Petitioner's mandatory detention has become unreasonable:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

No. 19-CV-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019), *appeal dismissed,* No. 19-1416, 2020 WL 2028502 (10th Cir. Jan. 22, 2020). "[D]etermining whether mandatory detention has become unreasonable 'is a fact-dependent inquiry requiring an assessment of all the circumstances of any given case.'" *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *4 (S.D.N.Y. Aug. 20, 2018) (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)).

First, the Court considers the total length of detention to date. *Muse*, 409 F. Supp. at 716 (explaining that how long detention has lasted is "critical to the due-

---

[2] *See, e.g.*, *Singh*, 2019 WL 3943960, at *4; *Jamal A.*, 358 F. Supp. 3d at 858–59; *Sajous*, 2018 WL 2357266, at *10–11.

process inquiry."). Mr. Villaescusa-Rios has been detained for 30 months. Respondents have failed provide this Court with any caselaw to support their contention that it is constitutionally permissible to detain someone for such a lengthy duration without due process. A number of district courts have found that shorter periods of detention are unreasonable and weigh in favor of an individualized bond hearing. *See, e.g.*, *Singh*, 2019 WL 3943960, at *5 (ordering individualized bond hearing where detention lasted over 20 months); *Perez*, 2018 WL 3991497, at *6 (ordering individualized bond hearing where detention lasted 9 months); *Sajous*, 2018 WL 2357266, at *11 (ordering individualized bond hearing where detention lasted 8 months); *Muse*, 409 F. Supp. 3d at 716 (ordering individualized bond hearing where detention lasted over 14 months). Accordingly, the Court finds that the first factor weighs strongly in Petitioner's favor.

Second, the Court considers how long the detention will likely continue in the absence of judicial relief. "Courts examine the 'anticipated duration of all removal proceedings'—including administrative and judicial appeals—when estimating how long detention will last." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (citing *Muse*, 409 F. Supp. 3d at 716–17). There is a significant probability that Mr. Villaescusa-Rios's detention will continue both during the pendency DHS's appeal before the BIA and throughout the course of a judicial appeal by either side. Therefore, "his detention will definitely terminate at some point, but that point is likely to be many months or even years from now." *Singh*, 2019 WL 3943960, at *6. Accordingly, this factor weighs in Petitioner's favor.

Third, the Court considers the conditions of Mr. Villaescusa-Rios's detention. In analyzing this factor, courts consider whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Sajous*, 2018 WL 2357266, at *11. "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717.

In this case, the conditions of Petitioner's confinement weigh strongly in favor of a bond hearing. Mr. Villaescusa-Rios is confined to the GEO Aurora Detention Facility, where COVID-19 is a present danger. As of January 20, 2021, ICE reported 45 confirmed cases of COVID-19 under isolation or monitoring, as well as 174 total confirmed cases of COVID-19, at the GEO Aurora Detention Facility.[3] Moreover, at least 37 detainees tested positive for COVID-19 in connection with a single outbreak in a dormitory at the GEO Aurora Detention Facility in October 2020.[4] Respondents do not dispute that Mr. Villaescusa-Rios suffers from a lung condition that puts him at increased risk of developing complications from COVID-19. Mr. Villaescusa-Rios has already contracted COVID-19 while in ICE custody, for which he was hospitalized on October 11, 2020. He is now housed in the GEO Aurora Detention Facility's Post Positive Asymptomatic COVID Pod, which is a general population recovery dorm for detainees who have contracted COVID-19. The Court cannot dismiss the possibility that

---

[3] *COVID-19 ICE Detainee Statistics by Facility*, U.S. IMMIGRATIONS AND CUSTOMS ENFORCEMENT, https://www.ice.gov/coronavirus#tab2 (last visited Jan. 19, 2021).

[4] Conor McCormick-Cavanagh, *Aurora Immigration Court Shuts Down Hearings After Major COVID Outbreak*, WESTWORD (Oct. 9, 2020).

Mr. Villaescusa-Rios may be reinfected with COVID-19, as cases of reinfection have been reported.[5] Accordingly, the Court finds that the conditions of Mr. Villaescusa-Rios's confinement weigh strongly in favor of a bond hearing.

Fourth, in considering delays in the removal proceedings caused by the detainee, "[c]ourts should be 'sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration.'" *Jamal A.*, 358 F. Supp. 3d at 860 (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). Mr. Villaescusa-Rios requested multiple continuances of his case. However, he did so to obtain legal counsel, to allow counsel time to prepare for proceedings, and to challenge the IJ's decision to deny his application for relief from removal. Petitioner's success in overturning the IJ's unfavorable decision on his application for relief from removal and in obtaining a favorable decision on remand indicates that he sought these continuances in good faith and not as a dilatory tactic. *See Singh*, 2019 WL 3943960, at *6. As such, this factor is neutral.

Fifth, the factor of delays in the removal proceedings caused by the government weighs in favor of Respondents. The parties agree that Respondents have not sought any continuances and have, instead, diligently pursued removal proceedings.

Sixth, and finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. The Court finds that this factor weighs in Mr.

---

[5] *Reinfection with COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020).

Villaescusa-Rios's favor because the appeal pending before the BIA concerns the IJ's grant of withholding of removal in favor of Mr. Villaescusa-Rios.

On balance, the foregoing factors weigh heavily in favor of Petitioner. Continued detention of Mr. Villaescusa-Rios requires an individualized bond hearing before an Immigration Judge to comport with due process.

## B. PETITIONER'S REQUEST FOR ALL OTHER RELIEF

Petitioner's remaining requests for relief—i.e., that the Court grant him relief from removal and that the Court order his immediate release from detention—must be denied.

First, this Court lacks jurisdiction over Petitioner's claim for substantive immigration relief, such as withholding of removal. Such a claim must be filed in the Court of Appeals on a petition for review from a final order of removal. *See* 8 U.S.C. § 1252(a)(5) (providing "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ."); *see also Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1278 (10th Cir. 2018) ("Congress clearly intended to funnel all challenges to removal through the petition for review process.").

Moreover, Petitioner's request for immediate release from detention must also be denied. Under 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General . . . regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." The Supreme Court and the Tenth Circuit have held that Section 1226(e), therefore, precludes judicial review of the Executive Branch's

decisions of whether to grant bond and under what conditions. *See, e.g.*, *Pelletier v. United States*, 653 F. App'x 618, 622 (10th Cir. 2016); *Jennings*, 138 S. Ct. at 841.

### III.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- The Petition and Complaint for Writ of Habeas Corpus (Doc. # 1) is GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent Petitioner moves this Court to order an individualized bond hearing. It is DENIED to the extent Petitioner seeks all other relief, including relief from removal and immediate release from detention;

- Within 14 days of the date of this Order, Respondents shall take Petitioner before an immigration judge for an individualized bond hearing in which the government shall bear the burden to demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *See Singh*, 2019 WL 3943960, at *7 (collecting cases);

- Petitioner's Motion for Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause (Doc. # 2) is DENIED AS MOOT;[6] and

- The Clerk of Court is directed to close this case.

DATED:  January 27, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[6] Mr. Villaescusa-Rios seeks substantially the same relief in his Petition and his Motion for Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause. Accordingly, the Court's decision on his Petition moots his Motion.